Supplee-Biddle Hardware Company v. Commissioner.
Supplee-Biddle Hardware Co. v. Commissioner
Docket No. 109358.
United States Tax Court
1943 Tax Ct. Memo LEXIS 414; 1 T.C.M. (CCH) 769; T.C.M. (RIA) 43132; March 9, 1943
*414 Prohibitions contained in petitioner's charter and stock certificates held not to entitle petitioner to credits claimed under section 26 (c) (1) of the Revenue Act of 1936. Where a stock dividend was paid by taxpayer in one of the taxable years, held that the market value of such stock as determined by respondent is approved. James F. McMullan, Esq., for the petitioner. Paul E. Waring, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion Respondent determined deficiencies against petitioner in income taxes for the fiscal years ended June 30, 1937 and 1938 in the respective amounts of $6,761.77 and $3,447.30, and in excess-profits tax for the year ended June 30, 1937 in the amount of $37.08. The first issue is whether petitioner is entitled to a credit for each fiscal year under section 26 (c) (1) of the Revenue Act of 1936 by reason of prohibitions in its charter and its stock certificates against the payment of dividends. The second issue presents the question of what was the fair market value of a stock dividend paid in preference shares of petitioner's stock on February 11, 1937, during the fiscal year ended June 30, 1937, for which market value petitioner *415 would be entitled to a dividends paid credit in that year. In the event we decide that the fair market value of the preference shares is greater than that determined by respondent we will then be presented with the question of whether petitioner is entitled for the taxable fiscal year ended June 30, 1938 to a dividends paid carry-over credit from the preceding year under section 27 (b) (2) of the Revenue Act of 1936. The proceeding has been submitted upon the pleading, testimony, and a stipulation of facts. The stipulated facts not set forth in our findings of fact are included therein by reference. Findings of Fact Petitioner is a Pennsylvania corporation with its principal office at 511 Commerce Street, Philadelphia, Pennsylvania. Its returns for the taxable years in question were filed with the collector for the First District of Pennsylvania. On December 18, 1933, an amendment to petitioner's charter was approved by the Secretary of the Commonwealth of Pennsylvania and filed in the Department of State of that Commonwealth. That amendment authorized the issuance of 1,000 shares of $100 par value first preferred stock, 5,000 shares of no par preference stock of which 4,050 shares *416 were to be presently issued with a stated value of $100 per share, and 14,000 shares of no par common stock of which 6,000 shares were to be presently issued with a stated value of $6,000. The charter as amended and the first preferred stock certificates, as well as the preference and common stock certificates, provided that the first preferred shares were entitled to cumulative dividends at the fixed annual rate of seven percent payable out of net earnings or surplus profits of the company; that no dividends were to be paid on either the preference or common shares at any time until all accumulated and unpaid dividends upon the first preferred shares had been paid or funds set aside for such payment; that after dividends had been paid upon or set aside for the first preferred shares in full, but before any dividends were to be paid upon or set aside for common shares, the holders of the preference shares were entitled to receive annual dividends at the rate of $7 a share cumulative only after January 1, 1935, or from the first day of the quarterly dividend period within which such shares were issued if issued after January 1, 1935, payable out of net earnings or surplus profits *417 of the company; that no dividends were to be paid upon the preference shares unless petitioner's net earnings for the fiscal year preceding the declaration and payment of such dividends equalled or exceeded ten times the amount required for the dividend on the outstanding first preferred shares; and that no dividends were to be paid upon the common shares unless petitioner's net earnings for the fiscal year preceding the declaration and payment of such dividends equalled or exceeded fifteen times the amount required for the dividend on the outstanding first preferred shares. On January 11, 1937, another amendment to petitioner's charter was approved by the Secretary of the Commonwealth of Pennsylvania and filed in the Department of State of that Commonwealth. In accordance with this amendment the then outstanding seven percent first preferred shares were exchanged, share for share, for an equal number of five percent first preferred shares and the outstanding $7 cumulative preference shares were exchanged, share for share, for an equal number of $5 preference shares and all outstanding common shares were exchanged, share for share, for new common shares. Under this amendment the authorized *418 number of first preferred shares was increased from 1,000 to 2,000. Under the amendment of January 11, 1937, the provisions of the charter and of the stock certificates remained substantially, so far as is material here, the same as before, except that the first preferred shares were to receive a 5 percent instead of a 7 percent dividend annually and the preference shares were to receive an annual dividend of $5 instead of $7 per share; and except that the provision that amounts equal to at least ten times the amount required for dividends on the first preferred shares must have been earned during the preceding fiscal year before the declaration and payment of any dividend on the preference shares and the provision that amounts equal to at least fifteen times the amount required for dividend on the first preferred shares must have been earned during the preceding fiscal year before the declaration and payment of dividends on the common stock were changed so as to provide that earnings during the preceding fiscal year must be in an amount equal to at least five times the amount required for dividends on the first preferred stock before payment of any dividends on the preference stock *419 and in an amount equal to at least twice the amount required for dividends on the preference stock before payment of any dividend on the common stock. The petitioner had outstanding shares of first preferred and preference stock in numbers and for periods as follows: First
Period
Preferred
Preference
7-1-36 to 3-31-37
1000
3990
At April 1, 1937
1000
4548
4-1-37 to 6-30-37
1000
4467
At July 1, 1937
1063
4548
7-1-37 to 9-30-37
1063
4505
At October 1, 1937
1083
4548
10-1-37 to 6-30-38
1083
4505
At January 1, 1938 and
April 1, 1938
1083
4548
During the years ended June 30, 1936, 1937, and 1938 petitioner had outstanding common stock as follows: 6,545 shares at June 30, 1936; 6,845 shares at June 30, 1937; and 7,405 shares at June 30, 1938. The respondent in his determination of a deficiency allowed no credit for either taxable year under section 26 (c) (1) of the Revenue Act of 1936. During the fiscal year ended June 30, 1937 and on February 11 of that year, pursuant to the resolutions of petitioner's board of directors adopted on October 13, 1936, approved by all classes of petitioner's stockholders at a meeting held on December 29, 1936 petitioner *420 paid a stock dividend on its $7 cumulative preference shares in $5 preference shares at the rate of fourteen one-hundredths $5 preference shares for each $7 cumulative preference share outstanding as of January 1, 1937, or a total dividend of 558.6 $5 preference shares having a stated value of $100 per share equalling $55,860 aggregate stated value. Dividends on both petitioner's 7 percent cumulative first preferred shares and 5 percent first preferred shares have been declared and paid in full since the first issuance of first preferred shares in 1934. No dividends were ever paid on petitioner's preference shares up to and including the taxable year ended June 30, 1938, except the stock dividend paid February 11, 1937. For the fiscal year ended June 30, 1937 respondent allowed a dividends paid credit of $15,856.75 consisting of cash dividends paid of $9,572.50; and the stock dividend of 558.6 $5 preference shares paid on February 11, 1937 as of December 31, 1936 and valued at $11.25 per share. Petitioner filed its income tax returns on a calendar year basis to and including the year ended December 31, 1935. It filed an income tax return for a taxable period of six months ended *421 June 30, 1936, to effect a change to a fiscal year ending June 30 of each year, pursuant to permission granted by the Commissioner of Internal Revenue dated May 15, 1936. For the year ended June 30, 1937 and thereafter it filed its income tax returns on a fiscal year basis ending June 30 of each year. Petitioner's balance sheets show the following: ASSETS
June 30, 1937
June 30, 1938
CURRENT ASSETS: Cash on deposit and on hand
$ 33,783.52
$ 32,749.54
Trade accounts and notes receivable
661,033.79
681,595.41
Reserve for bad debts
(27,726.08)
(29,216.45)
Sundry current assets
3,456.35
14,147.49
Merchandise inventory
523,022.35
506,119.94
Total Current Assets
1,193,569.93
1,205,395.93
MISCELLANEOUS ACCOUNTS RECEIVABLE
4,880.93
4,434.88
INSURANCE RESERVE DEPOSITS
10,220.21
9,791.42
OTHER INVESTMENTS
1,439.33
5,730.69
PLANT AND EQUIPMENT
122,947.48
198,467.59
DEFERRED CHARGES
15,817.57
15,550.38
$1,348,875.45
$1,439,370.89
LIABILITIES AND CAPITAL
CURRENT LIABILITIES
Notes payable to banks and brokers
$ 140,000.00
$ 150,000.00
Notes payable to trade creditors
265,862.43
257,453.74
Trade accounts payable
182,052.41
184,752.24
Taxes payable and accrued
22,435.45
25,459.96
Other sundry liabilities
10,720.98
11,845.71
Total current liabilities
621,071.27
629,511.65
MORTGAGE LIENS ON REAL ESTATE
50,000.00
90,000.00
Total liabilities
671,071.27
719,511.65
CAPITAL: New first preferred shares
106,300.00
109,300.00
Preference (old preferred) shares
454,860.00
454,860.00
Common stock
6,845.00
7,405.00
Surplus
109,799.18
148,294.24
Total capital
677,804.18
719,859.24
$1,348,875.45
$1,439,370.89
*422 Petitioner's book net income or losses for fiscal periods ended December 31, 1930 to June 30, 1938, inclusive were: Net Income
Year
(or loss)
12/31/30
($ 7,346.74)
12/31/31
( 267,125.75)
12/31/32
( 489,669.31)
12/31/33
( 28,025.07)
12/31/34
12,507.19
12/31/35
17,435.28
6/30/36 (6 months)
5,029.04
6/30/37
49,293.10
6/30/38
41,782.86
The last four items on the above tabulation represented net income after deductions of income taxes. During the fiscal year ended June 30, 1937 petitioner's $5 preference shares were not listed on any exchange. Between April 10, 1936 and October 10, 1938 there were recorded in the National Stock Summary the following bids for preference shares of petitioner: Date
Bidder
No. of Shares
Bid Price
October 9, 1936
Lilley & Co., Philadelphia
100
$ 9
April 8, 1937
Herbert H. Blizzard & Co., Phila
100
10
April 9, 1937
Lilley & Co., Philadelphia
100
10
October 9, 1937
Lilley & Co., Philadelphia
100
10
April 9, 1938
Lilley & Co., Philadelphia
100
10
April 9, 1938
Nash & Co., Philadelphia
100
10
September 9, 1938
Lilley & Co., Philadelphia
100
10
September 9, 1938
Johnson & Gorman, Philadelphia
100
10
*423 During the above period there were no offerings of preference shares and no transactions in such shares recorded in the National Stock Summary. During the month of October 1936 the unlisted stock trading department of Lilley & Co. was asked to quote the approximate market for preference shares of petitioner. Following its routine when asked to quote an obscure stock of a small company which stock did not enjoy a wide marketability, one of the partners of Lilley & Co. called one of the officers of petitioner and was informed that the stock was worth approximately $10 a share. This price was reported to the party who had made the inquiry, but Lilley & Co. did not receive an order to sell. During the period between October 9, 1936 and October 10, 1938 Lilley & Co. never received an actual offer to sell any preference shares of petitioner. From December 17, 1936 to February 6, 1937 there were 14 separate sales of $7 preference stock of petitioner totalling 100 shares. The sales price per share of 12 of such shares involved in seven sales was $12, of 10 of such shares involved in one sale was $12.50, of 31 of such shares involved in three sales was $15, and of 27 shares involved in *424 two sales was $14.50 or $15. There is no record of the sales price of the remaining 20 shares involved in one sale. From February 11, 1937 to June 30, 1937 there were 22 separate sales of 86 shares of $5 preference stock of petitioner. The sales price per share of 47 shares involved in 16 sales was $10, of 4 shares involved in one sale was $11, of 22 shares involved in three sales was $12, of eight shares involved in one sale was $12.50, and of five shares involved in one sale was $15. Of the above sales three shares were sold in each of two separate sales between February 1 and 6, 1937 at $10 per share and between February 10 and April 29, 1937, 14 shares were sold in five separate sales at $10 per share. Of the latter five sales one sale of three shares was made on February 11, 1937. Of the above sales 10 sales were made to Llewellyn A. Hoeflich, secretary of petitioner, six sales were made to William G. Steltz, president of petitioner, 14 were made to Mrs. William G. Steltz, wife of the president of petitioner, and all of the remaining sales were made to employees of the company. Of the above sales two shares were sold on April 29, 1937 to Hoeflich, petitioner's secretary, by *425 his cousin, at $12 per share, and on June 30, 1937, Harriet H. Robertson, sister of Hoeflich, sold Mrs. Steltz one share at $10. In addition to the above-mentioned sales a sale was made on July 26, 1937 of 5 shares of the $5 preference stock to Mrs. Steltz for $10 per share and on August 17, 1937, William G. Steltz, president of the company, sold 10 shares of the 5 percent preference shares at $15 per share to his sister-in-law. Opinion TYSON, Judge: The first issue is whether or not petitioner is entitled, under section 26 (c) (1) of the Revenue Act of 1936 [1], to dividends paid credits for the fiscal years ended June 30, 1936 and 1937 by reason of restrictions against the payment of dividends contained in its charter and in its stock certificates. Respondent allowed petitioner a dividends paid credit for the year ending June 30, 1937 only for the actual payment of cash and stock dividends during that year. In its petition petitioner claims that it is entitled, under section 26 (c) (1), supra, to a credit for both years to the extent that it was prohibited from paying dividends by provisions in its charter and stock certificates. No briefs were filed by either party. *426 Whether petitioner's claims on this issue are to be upheld depends on whether or not the restrictive provisions contained in its charter and stock certificates against the payment of dividends meet the requirements of section 26 (c) (1), supra. It is our opinion that they do not, for the reason that those provisions do not constitute such a written contract signed and executed by petitioner as is required by that section. Accordingly, we hold that petitioner is not entitled to the claimed credit. In making this holding we do not overlook the holding of the Circuit Court of Appeals for the Third Circuit in , reversing . Notwithstanding the high esteem in which we hold that Court and the profound respect we have for its pronouncements, we feel impelled to adhere to our previously announced interpretation of the statute involved, ; ; , *427 affirmed , reversed December 1, 1942 on rehearing but on another point; and , although our interpretation of that statute by the Circuit Court of Appeals for the Third Circuit in the above cited Lehigh Structural Steel Co. case. Especially are we so impelled in view of the holdings of the Circuit Court of Appeals for the Sixth Circuit in , certiorari denied January 11, 1943; ; and ; and the more recent holdings by the Circuit Courts of Appeals for the First and Seventh Circuits in , and ; all of which are in accord with our announced interpretation of the statutes here involved. Cf. ; *428 ; ; [Dec. 11,620]; and . Under the second issue we will now consider the question of what was the fair market value of 558.6 shares of $5 preference stock issued by petitioner on February 11, 1937 as a dividend on its preference stock for the purpose of determining the proper amount of petitioner's dividends paid credits for the year ended June 30, 1937. Petitioner, in its petition, claims that such stock at the time of its issuance had a fair market value equal to its stated value of $100 a share. Respondent determined the value to be $11.24 per share. Petitioner attempted to substantiate the value of $100 per share chiefly by evidence to show that the book value of the stock at least equalled the stated value. While book value is some evidence of market value it is not determinative thereof. As the Board said in , "We are here concerned not with book *429 value but with market value. The two are not synonymous." The unreliability of the book values of the assets shown on petitioner's balance sheets is strikingly demonstrated by the lack of convincing evidence as to the actual values of assets other than petitioner's real estate, as well as by the further fact that a well qualified real estate expert placed on the witness stand by petitioner testified that petitioner's real estate had a market value of $69,700 throughout the years 1937 and 1938, whereas, the value of such real estate as included in the item "Plant and Equipment" as shown on the balance sheet as of June 30, 1938 was $198,467.59. There was no other testimony as to the market value of such real estate. The record of sales of preference stock made at or near the time of the payment of the stock dividend clearly shows that the book value of that stock was grossly inaccurate. These sales prices ranged from $10 to $15 per share. With a few possible exceptions, the sales were made under circumstances indicating that the sales prices represented the approximate fair market value of the stock. For example, Hoeflich, the secretary of petitioner, testified that he arranged a sale *430 on June 20, 1937 of one share from his sister to Mrs. Steltz, wife of the president, for a price of $10; that on April 29, 1937, he himself purchased two shares from his cousin for $12 a share; and that on August 17, 1937, Mr. Steltz, the president of petitioner, sold 10 shares at $15 a share to his sister-in-law. Both Hoeflich's and Steltz' intimate knowledge of the company affairs must have acquainted them with the approximate value of the stock and we would be loathe to believe that they would have participated in these sales with their close relatives had the sales prices not represented the approximate fair market value of the stock. In another instance, a person owning a considerable amount of stock in petitioner requested Hoeflich to sell 40 shares of the preference stock for her. In connection with this sale on December 10, 1937 Hoeflich testified: "I had quite a little time, it took me about three months to get rid of all of that stock for her, but eventually I sold it for her at $15 a share". If the stock had a fair market value in excess of that figure we seriously doubt that Hoeflich would have had such difficulty in disposing of it. Other evidence to indicate that the *431 book value of the preference stock was grossly incorrect is the fact that no dividends up to the time of the stock dividend (February 11, 1937) had ever been paid on the preference stock and no further dividend on such stock was paid during that year. Also, in this connection it is to be noted that a partner in the firm of Lilley & Co., members of the Philadelphia Stock Exchange, testified that in October 1936, in response to an inquiry by a potential seller, he had called one of the officers of petitioner who informed him that the preference stock had a value of approximately $10 a share. We are unable to definitely determine from the record the actual market value of the preference stock on the crucial date of February 11, 1937, but taking the entire record into consideration we hold that the evidence does not warrant our disturbing the determination of respondent that the stock dividend paid by petitioner on February 11, 1937 had at that time a fair market value of $11.25 per share and that determination is accordingly approved. Having approved respondent's determination of the fair market value of the preference shares which were paid as a dividend on February 11, 1937, the *432 question whether petitioner is entitled to a dividend carry-over credit for the fiscal year ended June 30, 1938 requires no consideration. Decision will be entered under Rule 50. Footnotes
1. SEC. 26. CREDITS OF CORPORATIONS. In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax - (c) Contracts Restricting Payment of Dividends. - (1) Prohibition on Payment of Dividends. - An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.↩